IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DEBRA L. WIX, )
 )
          Plaintiff, )
 )
v. ) Case No. CIV-07-365-RAW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
          Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Debra L. Wix (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); see also, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 27, 1983 and was 23 years old at the time of the ALJ's decision. Claimant completed her education through the twelfth grade. Claimant has worked in the past as a receptionist for a radiology department. Claimant alleges an inability to work beginning October 1, 2000 due to sacroiilitis and bipolar disorder.

## Procedural History

On March 3, 2004, Claimant protectively filed for disability insurance benefits for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 27, 2005, a hearing was held before ALJ Lantz McClain in Hugo, Oklahoma. By decision dated May 12, 2006, the ALJ found that Claimant was disabled during the relevant period. On August 31, 2007, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform light work with some restrictions.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to discuss probative evidence concerning Claimant's alleged conversion disorder or somatization; (2) failing to develop the record regarding the possibility of a conversion disorder or somatization

4

in violation of the controlling regulations and rulings; and (3) finding Claimant did not suffer from chronic pain based upon a misapprehension of the report from the consultative examiner.

## Consideration of Probative Evidence

Claimant asserts the ALJ failed to properly consider all probative evidence in determining Claimant's impairments. On November 28, 2001, Claimant was referred to Dr. Donna Acquafredda, a rheumatologist, complaining of weakness and joint pain. Claimant was experiencing a painful rash on her chest, abdomen, and legs as well as morning stiffness lasting approximately one hour and a feeling of hot and cold. Dr. Acquafredda noted Claimant's "past medical history of depression/bipolar disorder and hypocholsterolemia." Claimant also exhibited pain to palpation along her wrists bilaterally, and also along the first and second MCP joint on the left hand. She had slightly decreased hand grasps and pain to palpation along the shoulder joints, but good range of motion. Dr. Acquafredda ordered testing to rule out an autoimmune disease such as Lupus or vasculitis. (Tr. 338-339). Later testing was not conclusive for Lupus. (Tr. 337).

On February 3, 2003, Claimant was attended by Dr. Mark Jarrett, a rheumatologist. Claimant told Dr. Jarrett that her symptoms has waxed and waned, but have responded to Vioxx. She noted increasing pains involving her knees and elbows with radiation down to her

ankles and hands. However, she denied significant fatigue or non-restorative sleep. A joint exam revealed multiple tender points but no evidence of joint swelling. Claimant had normal range of motion of all joints with effort-related weakness. Dr. Jarrett believed Claimant's clinical picture appeared to suggest fibromyalgia, but other causes needed exploration. (Tr. 336).

On May 21, 2003, Dr. Jarrett identified Claimant's condition as sacroiliitis in the right SI joint. He considered spondylarthropathy as a possibility. (Tr. 334).

On May 30, 2004, Claimant reported to the emergency room complaining of low back pain after helping her family move. She was diagnosed with acute lumbar strain. (Tr. 475).

On May 26, 2004, Claimant was referred to Dr. Richard Helton for a consultative examination. Dr. Helton diagnosed Claimant with bipolar personality, low back pain with myofascitis, and myofascitis of the cervical spine area. (Tr. 170-172). In addition to noting extension and flexion problems with Claimant's back, neck, hip flexion, hip rotation, and knee flexion, Dr. Helton found Claimant could not manipulate small objects and could not effectively grasp tools. (Tr. 174-176).

On May 27, 2004, Claimant submitted to Dr. Mabelle Collins for a mental status evaluation. Dr. Collins concluded Claimant's psychological state at the time of the examination included at Axis I: Post traumatic stress disorder; Axis II: No diagnosis; Axis

6

III: Sacrolitis; and Axis IV: Problems with social environment. (Tr. 180). Dr. Collins noted Claimant appeared angry, nervous, and reported feeling "closed in." She reported having suicidal ideations at one time, being depressed, tense, and irritable. Claimant also told Dr. Collins she had been raped when she was a teenager and had been diagnosed with bipolar disorder. (Tr. 177-180).

On July 2, 2004, Dr. Sally Varghese completed a Psychiatric Review Technique form on Claimant. She concluded Claimant suffered from a depressive syndrome characterized by appetite and sleep disturbance and feelings of guilt or worthlessness. (Tr. 314). Dr. Varghese also found Claimant suffered from anxiety with recurrent and intrusive recollections of traumatic experience, which are a source of marked distress. She diagnosed Claimant with post traumatic stress disorder. (Tr. 316). Dr. Varghese determined Claimant was moderately limited in her activities of daily living and maintaining social functioning. She found Claimant was mildly limited in maintaining concentration, persistence, or pace. (Tr. 321).

On October 13, 2004, Claimant's husband notified the agency that his wife's condition had worsened. He reported she had become incontinent and wore an adult diaper. He also reported Claimant was using a quad cane prescribed by her physician. (Tr. 111-112).

A Physical Residual Functional Capacity Assessment form was

completed on Claimant dated October 18, 2004. Curiously, the form is unsigned as page 333 of the administrative record is missing. In any event, the form reflects a restriction on Claimant's ability to occasionally lift and/or carry to 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, and sit about 6 hours in an 8 hour workday. (Tr. 327). The final assessment is missing as it is on the same page as the signature of the preparer of the form.

On November 23, 2004, Claimant was attended by Dr. Shyla Butt. She found Claimant to be depressed with severe pain in her legs and lower back. Claimant's gait was unsteady and she exhibited pain with range of motion. Dr. Butt assessed Claimant with chronic back pain, loss of bladder and bowel control, and stress/anxiety. Dr. Butt believed "there is lot (sic) of emotional component contributing to her symptoms as well since she is under lot (sic) of stress due to her parents, in-laws and husband's behaviour towards her illness." (Tr. 355-356).

On November 24, 2004, Claimant saw Dr. Bharthy E. Sundaram for a neurological consultation. He found Claimant complaining of difficulty with both legs with "out of proportion" pain in her lower back and both lower extremities. Dr. Sundaram noted that "patients with demyelinating disorder can be presenting in multitude of somatic sensory complains (sic) out of proportion to the neurological finding and it is very empirical that she needs to have

the MRI . . . . It is not uncommon to have somatization or conversion disorder secondary to underlying severe stress factors." (Tr. 346). Ultimately, the MRI of Claimant's brain and spine were normal as was her blood work. (Tr. 349-352).

On November 20, 2004, Claimant was admitted for further testing. (Tr. 530-531). During this time, Claimant was evaluated by Dr. Robert F. Goldstein, a neurologist. Dr. Goldstein's impressions were chronic low back pain, increasing in intensity, radiating up the back to the neck, associated weakness of the hands, numbness, weakness on examination, possible conversion reaction or somatization may be in associated co-morbid features of anxiety, stress or depression. He also wanted to test for possible rheumatological causes. (Tr. 534). Dr. Butt concurred in Dr. Goldstein's diagnosis of the possibility of conversion reaction or somatization. (Tr. 527). On discharge, Claimant was prescribed Valium and Tylox. Id.

In his decision, the ALJ found that if he accepted Dr. Sundaram's opinion as to Claimant having somatization or conversion disorder secondary to severe stress factors, he would be compelled to find Claimant disabled. (Tr. 19). He then proceeds to reject Dr. Sundaram's conclusions as not being well-supported by medically acceptable clinical and laboratory diagnostic techniques and not consistent with other substantial medical and non-medical evidence in the record. (Tr. 20).

Neither the ALJ nor Defendant challenges Dr. Sundaram's status as a treating physician. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict

the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's reason provided for rejecting Dr. Sundaram's opinion is it stands in isolation in the record and is, therefore, unsupported. The ALJ ignores the opinions of other medical sources in the record which support Dr. Sundaram's opinion - specifically, those of Dr. Butt and Dr. Goldstein rendered precisely the same opinions as Dr. Sundaram. On this basis alone, the ALJ's decision must be reversed.

But, even if he considered the opinions of these treating physicians' to be suspect, the issue of Claimant's possible somatization or conversion disorder should have given rise to the employment of a consultative examiner. The ALJ has a duty to consider all of a claimant's impairments and to develop the record to insure that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting

Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The ALJ should have developed the record further on Claimant's condition in this regard if he determined the record as it stood was insufficient for him to evaluate the affect of the condition upon her ability to work. On remand, the ALJ shall reconsider his findings as to the opinions of Claimant's treating physician. He shall also consider a consultative examiner to render an opinion on Claimant's possible somatization or conversion disorder.

### Consideration of Claimant's Chronic Pain

Claimant also contends the ALJ failed to consider the opinions of Dr. Helton in regard to the affect of Claimant's upper extremity pain upon her ability to manipulate objects. Quite simply, the ALJ made a mistake in reviewing the assessment by Dr. Helton. The ALJ specifically found Claimant's hand skills were found to be normal and her ability to grasp and manipulate objects were not limited. (Tr. 23). Dr. Helton found otherwise. (Tr. 176). On remand, the

12

ALJ shall review and consider Dr. Helton's findings.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 30th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE